Texas, L.L.C. Okay, Mr. Kelly, when everyone's ready, we can begin. May it please the Court, Peter Kelly here on behalf of Plaintiff Appellant Leoncio Garcia. Let's go straight to the trash cans, which are the bold-faced heart of the equal inference ruling by the District Court and Wal-Mart's argument here on appeal. As the Court knows, there is a videotape that captures about two hours of events at the entrance of the Wal-Mart on a morning around 6 a.m. 555, we see a scrubber coming through. It pauses at a particular spot. 620 a.m., we see Mr. Garcia walk on exactly that spot. He puts his foot right where— And importantly, that spot was where there was some change in the texture or height or type of flooring. Precisely, Your Honor. You can see where it shifts from a dark flooring to a light flooring. There must be some sort of seam there. The scrubber stops there, and the scrubber is the only thing that we know of that actually contains clear, slippery liquids during the entire two hours of this videotape. It stops for about two seconds? Stops for about two seconds, Your Honor. And it's all at approximately 555, 38, starting then. So when the scrubber first comes into the videotape, comes in, pauses for a couple seconds, probably enough time for something to accumulate or fall loose and fall off, and then it goes, continues going out and exits the frame. And doesn't the record show that the scrubber was only being moved at that point? It was not actually being operated for the purpose of cleaning the surface? The record does not show that either way, Your Honor. But even if it was not being operated, even if it wasn't actively laying down liquids, it was still carrying liquids. That's the point of the scrubber. It puts down waxy liquids and— Well, all right, but there's also nothing in the record that says it was still carrying liquid. Correct. But it's the only thing designed to carry liquids and, when it's being operated, carries liquids. If we go to the garbage cans, for instance, the garbage cans, which the defendant boldfaced in their brief, those are being carried back into McDonald's. And their argument is, and the court below picked it up, was they could have been dripping some clear liquid. But garbage cans going into the McDonald's would have been empty. They wouldn't have been carrying any trash or any garbage. And secondly, they don't go over the precise—to the same spot. The first garbage can, and I gave the court a timeline in some oral argument exhibits, at 606-57, actually goes to the right of where the scrubber was, had been 10 minutes earlier. The other one goes, actually, to the left of where Mr. Garcia stepped. And just the way the trash can was being carried, it might have crossed over just a tiny little bit. But there's no indication that it was dropping anything or that it was even carrying anything that could be spilled from it. So a reasonable inference— But the same was true of the scrubber, that there's no necessarily any indication that it contained liquid or that anything happened to cause it to discharge or spill any liquid. The same is true of the machine and of the garbage can. No, Your Honor, I would disagree in that logically—and this is—we're talking about reasonable inferences a jury could make and whether this question could go to the jury. Is it possible that a jury could look at the facts and say, that scrubber, which is designed to carry soapy liquids and was being operated—it wasn't actually scrubbing, but was in operation at that time—had soapy liquids in it and spilled some when it went over that particular spot? I thought you said we don't know whether it was in operation at that time, as opposed to merely being perhaps returned to storage or something like that. All we know is it was being driven. And we don't know whether the—and there's some evidence in the summary judgment about that the manual—the problem is we don't yet have the deposition of the driver. Walmart never produced the name of the scrubber operator. In getting his testimony—this goes into the second issue that we've raised—is that we need to get his testimony. It would be useful to have his deposition. The Walmart did not disclose his—the identity of the scrubber operator until after the discovery deadline. One would think that that would be long in Rule 26 disclosures. But it never showed up, not until after the February 1, 2017, discovery cutoff. You didn't raise a Rule 50—what is it, 56D now—objection that there needed to be that discovery before summary judgment could be ruled on? We had moved for an extension of the summary judgment deadline, moved to extend the discovery deadline. And, yes, those motions have been preserved and raised in the district court. Well, I'm talking about something different. A summary judgment motion is made and the party objecting to the summary judgment says, wait, Your Honor, we need the following specific discovery—depositions, interrogatories, whatever it might be—so that we can try to defeat the motion for summary judgment. Was that sort of motion made? I don't think we actually have one styled as a 59E motion, although there had been—the issue had been presented—it's been squarely presented to the district court to postpone the submission of the discovery—of the summary judgment motion so we could complete discovery. That was granted in very limited part where the district court allowed us two depositions, but not—but still we did not know the name. We didn't even know the name to ask for it at the time. What was the name of the scrubber operator? Well, that's what interrogatories are for, aren't they? That's also what Rule 26 disclosures were—persons of knowledge of interesting facts. Walmart successfully hid the ball throughout the discovery process. But you didn't file a motion to compel? No, there had not been a motion to compel until relatively late in the game. And it seems to be reconstructing from the record on appeal that the lawyers handling the trial were keying getting the discovery—for instance, getting a working copy of the video—were keying that on when they finally got the deposition date for Dillard and Gaines, which did not occur until after the discovery cutoff and only because the district court allowed—granted the motion. They had been asking for deposition dates, asking for deposition dates. They never got deposition dates. They finally got them, and in preparing for the deposition, realized they did not have a working copy. They did not have an ability to ask the deponent about the contents of the video because they did not have a working copy of the video. But going back to the equal inferences, it's a reasonable inference that the scrubber was the only thing that traversed that particular spot where Mr. Garcia slipped that was actually carrying something that would cause him to split. What time did the store open for anyone to be in there at the Walmart? It was a 24-hour. It was a 24-hour. 24-hour. It opened the whole 24-hour period. Right. Okay. So, the videotape starts, I think, an hour, an hour and a half before the scrubber comes through. Half an hour after the scrubber comes through, Mr. Garcia slips, and there's no indication that nothing came through in the previous 24 hours, but one would suspect that the time—again, it's a reasonable inference for the jury to make—that not much traffic is going on between 2 a.m. and 5 a.m. Even at Walmart. Even at Walmart. It's surprising how many people are coming in. I can't wait to get those low, low prices at 6 a.m. coming in to the Walmart at that time. What injury did Mr. Garcia sustain? Pardon? What injury did Mr. Garcia sustain? When he slipped, he injured both his knees, twisted both his knees, either ACL or MCL, and he's had surgeries on both his knees as a result. You commonly see that sort of thing, usually, in ice injuries, in colder climbs, where people slip, and they don't necessarily fall and hit, but the actual twisting motion of the legs will wrench the knees. Those are the injuries he sustained. After he fell, when the Walmart employee came and put the cone or the sign or whatever, was there any dispute that there was liquid or water or something on the floor there? No, there was not. The Walmart incident report, which is relatively terse, does indicate the presence of a liquid at that spot where he slipped. Again, it's very clear on the video precisely where his foot hit, and you can see his knee shooting out. But we're all turning to, and I would like to refer the court to its opinion in the Flock case, which is the fire case where there are numerous lighters in the, I believe it was a mobile home, but there was only one manufactured by one particular manufacturer where the fire started. Now, initially, the district court said, well, the equal inference rule, there are all these other different incendiary devices in the mobile home, it could have been any one of them. But a reasonable analysis, which this court engaged in, actually looking more closely at the inferences that were drawn, for instance, well, if there was one lighter that was in the kitchen, the inference would have been that the young boy had taken the lighter from the kitchen, taken it into his bedroom, started the fire, and returned it to the kitchen. That's the type of speculative leap that Wal-Mart is asking the court to make here in saying that all these different traverses of the slippery area are identical, which is essentially what the district court ruled. It said, you know, it could have been a person walking by, it could have been these trash cans, there's nothing to separate those from the scrubber. But the scrubber is the only thing that we know is designed to, and in all likelihood was carrying, slippery clear fluids at the time. There really is no other reasonable explanation on this lengthy videotape of how that fluid got there. And where does that get us? If we ask the jury, and this is Exhibit 2 on the oral argument exhibits I submitted, we talked a lot, both parties were talking about, does this question go to the jury? And I thought it would be useful to the court to think of what exactly would we be asking the jury. If we go to Exhibit B, Question 1 would be, and it may not be identical to this, but essentially, did Wal-Mart create the hazard that caused the injury in question? Now under Wal-Mart v. Reese from the Texas Supreme Court, and this court's opinion in McCarty which came out last year, if the jury finds by a preponderance of the evidence that the scrubber is the thing that deposited the liquid on the floor, then that satisfies the plaintiff's notice requirement, the knowledge requirement. So if we get a yes answer to Question 1, we then go to the traditional premises liability question. And we have to, and the key part of that is Item 2, and this is taken straight from the Texas Pattern Jury Charge, and it tracks all the Texas Supreme Court cases, that Requirement 2 is, Wal-Mart knew or reasonably should have known of the danger. Now if we get a yes answer to Number 1, we go down to the instruction, and this is following Wal-Mart v. Reese and this court's opinion in McCarty, that you are instructed that if you have answered yes to Question 1, then Wal-Mart should have known of the danger. It establishes as a matter of law that if Wal-Mart created the hazard, that it had constructive knowledge. Now even if we don't get a yes answer to Question 1, we still have two other options for establishing the knowledge requirement. First is that Wal-Mart knew, and this is a standard of actual knowledge, and this court is probably where you very rarely get that in a premises case, especially in a slip and fall where the defendant is going to admit that they had actual knowledge of it, or should have known. And then the whole other, and there's a second way of establishing should have known. One is the constructive knowledge. The first one, which is discussing, which is creating the hazard. And the second is the temporal proximity, the macaroni in the aisle or the spilt grape or the hanger back in the dressing room. But the key to that, and this is why, even if we were just relying on that, summary judgment would have been improper, is that this court has said in McCarty and the Supreme Court has said, Texas Supreme Court has said very frequently in Reese and in Danen and others, you have to look at the reasonableness of the inquiry. And the reasonableness of the time, the reasonableness of the proximity of the employee. Now it's one thing if you have a dressing room in the back corner where maybe two or three people are going during the course of any hour or two hours, or especially at 6 a.m. Nobody's really trying on clothes back in the dressing room there. And so it might be understandable that the hanger would have to be on the ground for But when you're talking about what is, by definition, the busiest spot in the store, which is the entrance. Everybody comes in the entrance. Even the people not going into Wal-Mart. People going into McDonald's are coming in the entrance to the Wal-Mart. The reasonableness, the reasonableness of the inspection, the reasonableness of Wal-Mart not inspecting is a question for the jury. Now bear in mind, we had several other Wal-Mart employees walking, traversing this general area, if not specifically on the spot. We had a Wal-Mart stalker three, four feet away, continuously, for two spells, adding up to about seven minutes. This is the entrance to the store. So it would be for the jury to decide, if we're relying on the temporal and proximity test, which I don't think we have to because we still have the creation of the hazard test. If we're relying on that, we can still get to go to the jury, because the question would be, was Wal-Mart acting reasonable in not inspecting it, or in not having, after the scrubber goes through the busiest area of the store, not have a mopper come through it. So we have three bites at the knowledge apple. One's established by the videotape. One we're not going to get. We're not going to establish actual knowledge. And the other one, under Texas law, we should be able to at least go to the jury on the All right. Thank you, Mr. Kelley. You've saved time for rebuttal. Mr. Jackson? May it please the Court. Your Honor, in this case, Judge Gilmore properly granted summary judgment to Wal-Mart. The issue that Wal-Mart attacked, there were four elements that the plaintiff needed to prove. One was knowledge. The issues on knowledge involved either actual knowledge or constructive knowledge. Because Wal-Mart disputed whether or not there was any knowledge on the part of Wal-Mart of the spot of water on the floor, that then would not lead to an inference that Wal-Mart created the spot. So, in addressing some of the issues on the actual knowledge, the actual knowledge comes down to whether or not I thought Mr. Kelley just said he knows they can't establish actual knowledge. I thought that's what he just said. Fair enough. Fair enough. I'll move on to the constructive knowledge element then. Under Reese, the Court said that mere proximity is simply not enough. There has to be something more than that. There has to be a time notice rule. And the amount of time is also something that's very critical. In the Shirey case, Judge Rosenthal said that . . . When you say proximity, you're talking about proximity in terms of feet and inches or proximity in time? What are you . . . Well, I would say proximity both in location and it's also there's a conspicuousness element as well as Judge Rosenthal addressed in Shirey. She said that proximity, conspicuity, and longevity were the words that she used. So, proximity alone doesn't carry the burden. There was a case where a person was mopping and I believe that was another case, another Wal-Mart case, where a person was mopping five feet away and the Court held that that was insufficient to establish simply by the mere proximity that they should have noticed or should have seen the problem. But here you have a Wal-Mart piece of machinery that no one contests often contains a slippery liquid and passed over the spot where some short time later an accident occurred. So, I don't understand how there's a proximity problem. Well, I think there's a . . . the question then shifts to there were multiple potential causes of what could have left the water on the floor. All right. One was the . . . what the garbage can from McDonald's. What others were there? One was the garbage can from McDonald's, which I would disagree with counsel. I think it passes directly over the spot. And whether or not there's garbage in there or not, there may still be liquid in it. Right. And what are the others? You said there are multiple. The third one, if the Court reviews the surveillance video, at approximately 6.01 a.m. a customer comes in the store. He's wearing a white shirt and he takes a drink as he's walking in the store. The drink is in his right hand and his right hand passes over that same area. So, that's another possible, possible cause of leaving the liquid on the floor. But the liquid on the floor was found to be a slippery liquid, wasn't it? The liquid on the floor was. I think he did . . . I think the evidence shows that Mr. Garcia slipped on it. That's true. I mean, there was no . . . are you saying that the record doesn't reflect that there was any examination of the substance on the floor to determine whether it was slippery or not? I think that seeing Mr. Garcia slip in it would indicate that it was potentially slippery. But I think the issue is more when the actual spot of water got on the floor. And because there are multiple reasonable inferences, Judge Gilmour stated that because there were multiple reasonable inferences, that you could not infer that the scrubber itself caused it. Well, I thought that's why we had juries. Well, what the court in Murray v. Chick-fil-A said was that the issue of conspicuous knowledge is something that may at times be a fact question. But in Murray v. Chick-fil-A from the Fifth Circuit in 2015, the court said it's not a question of fact solely for the jury just because it involves a state of mind. A non-movement must show some evidence. And it can't just be meager circumstantial evidence like the court examined in the Gonzalez case. All right. Well, so you've got a video that shows your client's machine, which we can all agree often contains a slippery liquid, and the video shows that it passed over the spot where there was a slip and fall and that at that point there was some sort of a change in the texture or the height or both of the walking surface. So that is certainly some evidence, it seems to me, some substantial evidence of the way that the liquid might have gotten there. That is a – I would say that that is a possibility. And the reason I say it's a possibility is because the gentleman that was driving the scrubber at the time, there's no indication that the controls were on, that he was actually performing scrubbing operations, or that the vehicle at that point even had liquid in it. For one thing, he goes down the aisle, but he never comes back up the aisle. So I think a reasonable inference would be he's returning the scrubber to wherever it's supposed to be stored. There's no evidence that that piece of machinery did or did not have liquid in it and no showing of any kind of whether the McDonald's garbage can had or did not have liquid. Is that right? That is also true, Your Honor. And again, you have multiple – you have at least two potential causes of having this water on the floor. The scrubber may have caused it, but again, that is a speculative – based on meager circumstantial evidence. There's no evidence that shows that the scrubber actually leaked or that there was actually liquid in the scrubber at the time. You're right. Again, there's no evidence that there was liquid or there was not liquid in the McDonald's trash bin. There's also no evidence, particularly on the video, that the customer who walked by with an open drink in his hand spilled anything. So I think when you're faced with multiple potential reasonable inferences, the courts have said you cannot pile an inference on top of an inference on top of an inference to create a fact question. I think one of the courts said in McCarty, which was a slip and fall at a Houston's restaurant, the court there said suspicion piled on suspicion results in suspicion, not a fact question. And that also involved a slip and fall on a clear substance. So I think that in this case, the court correctly ruled that because there were multiple potential sources, reasonable sources of the water being on the floor, the court correctly ruled that the plaintiff had failed to identify the specific evidence in the record and to articulate the precise manner in which the evidence supported the claim. What they're talking about is this scrubber could have had water in it. It might have had water in it. It might have been operational. Where was this water in relationship to the entry to the Wal-Mart? How far? Where was this water in relationship to the entry into Wal-Mart? If you look at the videotape, Your Honor, it's where the people walk in. They walk in. Sometimes they go to the right. Sometimes they go to the left. But it's in that aisle directly in front of the entryway. It's a fair ways away. What do you mean a fair way? How far was it? It's hard for me to estimate because I didn't measure. So I think that coming up with trying to see if measurements are here, there's nothing in the record that shows exactly how far it was. I would say if you look at the video at about 6.01, where the gentleman in the white shirt who's drinking comes in, he takes about five or six or seven paces to get to that point. Right at the entry point then. It's near the entry point. Five or six steps. It might be seven or eight. I didn't exactly count or quantify it. I got you. But I think the issue is that the plaintiff even concedes that it's unclear whether or not the auto scrubber caused the liquid. It could have been caused by customers. It could have been caused by the trash bin going either out or coming back in. The trash bin goes by twice. So again, in the Flock case, which counsel pointed out, there was only one lighter in the room. In several of these cases, including the Mendoza case, there might have been many different reasons why there was the macaroni on the floor. And in fact, if there are multiple reasonable inferences, then the courts have said that it's not proper to say that there is evidence, more than a scintilla of evidence, to support or to defeat a motion for summary judgment. And again, one of the keys that the courts focus on is the time notice rule as well. If a condition has existed for a sufficient amount of time, the courts say have held as a matter of law that it's simply not enough. In Gonzales, with the macaroni on the floor, macaroni salad on the floor, that had car tracks and dirt in it, the court said that the fact that the proof is difficult, that's no excuse to avoid introduction of evidence of causation. In the Threlkeld case and the Gonzales case, both courts observed this may be a harsh reality, that the plaintiff may not be able to establish constructive knowledge. In the Shirey case that I mentioned earlier, there was a grape on the floor for 17 minutes. An associate, 30 seconds after this one grape fell onto a white floor, walked past the grape. The argument there was that he should have seen it. He should have had notice of it. But as I recall, immediately after the accident, a Wal-Mart employee took a cone and walked straight to the liquid and put the cone there. It didn't take him long to locate it. After the general fell? Yeah, for sure. He came over and helped him. He put the cone right where the liquid was. They did put a cone where the liquid was. Yeah, he walked straight to it. So I think the question there is, and going back to the point I made earlier, nobody knows when the liquid got there or how it got there. There's no proof of how it got there. And I think that the multiple reasonable inferences— You didn't have to look very hard to find it, is what I'm saying to you. He walked straight to it. He knew exactly where it was. Your Honor, I would also say that that's where the gentleman was, and he'd fallen. So, again, the conspicuous of it, as the Reese court notes, a clear liquid on a light floor with a small area may be less conspicuous. In the Brookshire v. Allen case, there was a grape, and there was no evidence that anybody had a chance to see it within 15 minutes. And the court there said, that's not enough time. Many of these cases that have been cited in— Remind us how much time elapsed, according to the video, between the time when the machine passed over the spot of the ultimate slip and the slip and fall itself. Between the time the machine went over and the fall, I believe it was around 23 minutes. Between the time the McDonald's can went by and the fall was about 6 minutes. So there's simply no basis for recovery, and it's not a question of fact, just because there are disagreements. The Murray case has been criticized at one point because it imposes a hard-line temporal requirement, but I think that's the standard that is applied. There's a hard-line temporal requirement, and the plaintiff in this case simply has not established that. Finally, I'll address the issue of the discovery. The discovery issue that has been raised by the plaintiff in this case is, I think, a little bit inaccurate in terms of what happened. First of all, discretion is a very broad discretion for the trial court to make its rulings on a motion to compel. They claim that Walmart did not identify the scrubber employee. That's possible, but we did provide a videotape on March 24, 2016. They sent us a note on April 7, 2016, and said, we cannot view this videotape. On August 8, we sent an email back saying, we are going to send it to you in a Microsoft Windows viewer format on both a CD and on a thumb drive. The next thing that happens is on January 5, 2017, the plaintiff sends a demand letter, and in the demand letter the plaintiff specifically refers to the surveillance video and specifically refers to employees that can be seen in the surveillance video. Our assumption at that point was that they had a workable copy of the surveillance video because they had not said anything otherwise since April when we provided them the second time a CD and a thumb drive, and in January they do specifically refer to the video and the employees in the video. Were you specifically asked to provide the name of the operator of the machine? Not until after the discovery deadline and after Walmart filed its motion for summary judgment on March 27, 2017. You're telling us before that time there was no request that could reasonably be understood as asking for the name or identification of what I'll call the driver or operator of the machine? They had filed a motion on the 27th, the same day that we filed our motion for summary judgment, to ask about employees generally, but again that was after the discovery deadline and a few days before the motion's deadline. What about your obligation under Rule 26? Under Rule 26 we identified the people that we knew that had knowledge. We felt that this person did not have knowledge, but at the same time we provided them with a video that showed if he wanted to say that this was a person that was significant, he could have brought it up. He could have brought it up himself. And the courts say in a days-in case, the court says that if the conduct of the respondent to discovery necessitates a motion to compel, the requester must protect himself by timely proceeding with the motion to compel, and if he fails to do so, acts at his own peril. But you had the video, so you knew who the operator was. I guess your client could determine who the operator was. We had a copy of the video. We were aware, and we provided it to the plaintiff. But from that you would know, I assume, Walmart, who the operator was. I think we could have discovered that, Your Honor, yes, but there was never any kind of indication on their part that they wanted to talk to this operator, even though they knew it as well. So our position would be that he simply waited too long. Rule 26 is designed to put a front-end obligation upon you to identify witnesses, or potential witnesses, not responsibly to interrogate or do anything else. And so you knew that that person was there, but you just determined yourself unilaterally that he didn't have anything to say. Your Honor, it's possible that we maybe should have done that, but at the same time we provided them with the information that they came up with later to ask about employees, and they didn't specifically ask for this person's deposition, and they didn't ask for it in a timely fashion. They weren't diligent in pursuing their discovery. And the courts, the Prido v. Tyson Foods case, the Days Inn case, the Smith case, and then the Column case that we go over in detail, talk about this idea that it's important for someone who is seeking that information to not wait until the last second. They didn't file a motion until after the discovery deadline. They didn't file a second motion to try and seek this deposition until after the motion deadline. And Judge Gilmour, who has very broad discretion in enforcing her scheduling orders, ruled and denied their motion to compel, and did allow them to take depositions of two individuals and supplement the record with those two individuals. It's a case where I think Judge Gilmour has broad discretion to rule and to control her schedule, and she exercised that broad discretion, and I believe it's not an abuse of discretion. And in closing, Your Honor, Walmart would point out that, number one, there's really not a dispute about actual knowledge. Number two, with respect to constructive knowledge, there were multiple potential sources of water on that floor, and you cannot take one inference over another if they are both equal. Thank you, Mr. Jackson. Mr. Kelly, you've saved time for rebuttal. To fully answer an earlier question, Mr. Garcia also hurt his back, which required surgery. We had supplemented with information about his knee surgery, and I'd forgotten about the back surgery in addition. One of the issues is the inferences that can be drawn from the scrubber. Can we infer that it was operating? Can we infer that it was leaking? Can we infer that it had? Could a jury reasonably infer that it actually had liquid in it? One of the pieces of evidence that was submitted to the trial court, to the district court on this, and we would certainly go to the jury as to what inferences can be made, is that Walmart itself assumes that these scrubbers are going to be leaking. It is in their written policies for employees whenever time the scrubber goes through the store, someone's supposed to follow with the mop and to mop after them. And that's without regard to whether it's actually in operation, actually in scrubbing or not. While it's just traversing from the storeroom to where it's going to be scrubbing, someone's supposed to follow it. And the only reason Walmart would have that policy is if there's some sort of presumption or at least some sort of inference that it would be leaking or that it could leak. So Walmart itself, by adopting these internal policies, is telling the jury what reasonable inference to make from the presence of the scrubber. Now, sure, other things could have conceivably contributed to it, but those aren't reasonable inferences. And I was trying to explain earlier, and I apologize for the blurriness of this, but these are the stills from the video. You can see where this is Mr. Garcia. The first Walmart garbage can goes to the left of where he slipped. And I indicated in the exhibit, it's throughout the record, where you can see. The second Walmart can is a little bit trickier. You're talking about the McDonald's cans? McDonald's can, I'm sorry. It's a little bit trickier, but just one corner crosses it, and it's actually the elevated corner crosses the spot. So if you think about what a garbage can that might be leaking, well, the leaking would be over the wheels, which are closest to the ground. I mean, if you're tilting a garbage can, you take it out to the street, one end goes up. Well, that's the end that crosses over the spot where Mr. Garcia slipped, not the wheel end. So if there was a liquid in it, it would be gathering towards the wheel end, which is not the part that crossed where— Unless it's leaking. Pardon? Unless it's leaking. Well, it wouldn't be leaking from the top. It would be leaking from the bottom. Either top or bottom. But it's not a reasonable inference for the jury to make, and this is something we'd be—Wal-Mart would be asking the jury to make certain inferences. We'd be asking the jury to make other inferences. But the point is we get to go to the jury, at the very least, with that question. One is did Wal-Mart create the hazard? And they can say that it was the man who came running through or possibly a McDonald's trash can, but they have to establish that it's a reasonable inference and that it is equal inference that the scrubber, which is designed to carry slippery, clear liquids, is the one that actually dropped it. So the court should follow Flock and look at—perhaps with more detail than the district court actually did— look at the types of inferences that Wal-Mart is asking the court to make. And, again, this is why we have the juries to make these determinations, to balance the facts and to make the factual determinations, and also, just as importantly, to determine what is reasonable conduct, what is a reasonable inspection, what should Wal-Mart have reasonably done, reasonably expected, in terms of constructive notice at the entrance to the Wal-Mart. If there are no more questions— Thank you, Mr. Kelly. Your case and all of today's cases are under submission, and the court is—